UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BANK OF AMERICA, N.A.,

                Plaintiff,                  <u>Memorandum & Order and</u>
                                                  <u>Report & Recommendation</u>
                                                    10-CV-5204 (FB)

    -against-

3301 ATLANTIC, LLC, et al.,

                Defendants.
-------------------------------------------------------x
*Gold, S., United States Magistrate Judge*:

## INTRODUCTION

      Plaintiff, Bank of America, brings this action as trustee of a Real Estate Mortgage

Investment Conduit ("REMIC") trust seeking a judgment of foreclosure on a mortgage on real

property contained in two lots in Brooklyn, New York. The mortgage secures a note executed by

defendant 3301 Atlantic and guaranteed by its principal, Apergis (referred to herein collectively

as the "obligor defendants").

      The obligor defendants do not challenge the existence of the mortgage or that 3301

Atlantic is in default. Rather, they oppose plaintiff's motion for summary judgment and cross-

move to dismiss by challenging plaintiff's assertion of diversity jurisdiction and the validity of

the transfer of the mortgage to the REMIC trust. Defendants Blue Ridge Farms, Inc. ("BRFI"),

and Jeffrey and Richard Siegel move for certain protections should a judgment of foreclosure be

entered against the obligor defendants.

      The plaintiff and obligor defendants have consented to have me decide the pending

motions. *See* Docket Entries 55, 64. The other defendants have not consented, however, and I

will therefore report and recommend on plaintiff's motion as it pertains to them and on the cross-

motion made by BRFI and the Siegels. For the reasons set forth below, plaintiff's motion is

granted as to the obligor defendants and the obligor defendants' motion is denied. I respectfully recommend that the plaintiff's summary judgment motion also be granted as to defendants Martin Sussman, BRFI, and the Siegels and that judgment as to stayed defendant Blue Ridge Foods be deferred.[1] I further recommend that the cross-motion made by defendants BRFI and Jeffrey and Richard Siegel be denied without prejudice.

## BACKGROUND

This statement of facts is drawn primarily from the Rule 56.1 statements submitted by three groups of parties involved in the case: those of the plaintiff ("Pl. R. 56.1 Statement," Docket Entry 44-2), the obligor defendants, 3301 Atlantic and Apergis ("3301 Atlantic R. 56.1 Statement," Docket Entry 42), and defendants Blue Ridge Farms, and Jeffrey and Richard Siegel ("BRFI R. 56.1 Statement," Docket Entry 47-2).[2] Plaintiff claims to hold a mortgage note as a trustee for a REMIC. *See* Pl. R. 56.1 Statement ¶ 12; Amend. Compl. at 1.[3] A real estate mortgage investment conduit, or "REMIC," trust "consists of a pool of mortgages . . . the beneficial ownership of which has been sold to various investors in the form of certificates representing their undivided ownership interest in the total pool." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing*, 2011 WL 6034310, at *1 (S.D.N.Y. Dec. 5, 2011). As trustee, plaintiff seeks summary judgment and a default judgment against defendants New York City Environmental Board, East Coast Petroleum, and June Siegel (as an individual and representative

---

[1] This action was stayed as to Blue Ridge Foods due to a pending bankruptcy proceeding in another district. Mot. for Stay, Docket Entry 65; Court Order dated Apr. 20, 2012.

[2] The obligor defendants' statement does not correspond to that of the plaintiff as required by Local Civil Rule 56.1. It appears, however, that the facts alleged by both parties are essentially the same; rather than dispute the facts, 3301 Atlantic and Apergis challenge the legal validity of the documents presented by the plaintiff, as is made clear in their memorandum of law. *See* Docket Entry 43. Defendants Blue Ridge Farms and the Siegels state that they "do not dispute those facts set forth by the Plaintiff." BRFI R. 56.1 Statement ¶ 1.

[3] "Amend. Compl." refers to plaintiff's amended complaint, Docket Entry 10.

of the estate of Seymour Siegel), in order to foreclose on the mortgage and its security interest in certain collateral. *See* Pl. Mem. at 16.[4]

The history of the loan in question is somewhat involved. 3301 Atlantic executed a promissory note with Arbor Commercial Mortgage on November 21, 2005. Pl. R. 56.1 Statement ¶ 1; 3301 Atlantic R. 56.1 Statement ¶ 1(a). At the same time, Ms. Apergis guaranteed the note, and 3301 Atlantic entered into two mortgages, which were consolidated into one, securing the note. Pl. R. 56.1 Statement ¶¶ 2-3. Plaintiff avers that, also on November 21, 2005, Arbor assigned the mortgage to Wachovia Bank, N.A, *id.* ¶ 5; the obligor defendants state that Arbor "allegedly" assigned the mortgage, although they do not argue in their motion to dismiss that this particular assignment was invalid. *See* 3301 Atlantic R. 56.1 Statement ¶ 1(b); 3301 Atlantic Mem. at 5-8.[5] The mortgage was in turn assigned by Wachovia to Wells Fargo as trustee for the REMIC trust on April 10, 2006. Pl. R. 56.1 Statement ¶ 6; 3301 Atlantic R. 56.1 Statement ¶¶ 1(c)-(d) (obligor defendants add that the assignment documents "were originally blank and *un*dated" (emphasis in original)).

On January 10, 2008, Wells Fargo attempted to foreclose on the mortgage in Kings County Supreme Court. 3301 Atlantic R. 56.1 Statement ¶ 3. That action is currently stayed. *Id.* On September 19, 2008, the parties entered into a forbearance agreement. *Id.* ¶ 4. 3301 Atlantic filed for bankruptcy protection pursuant to Chapter 11 on January 14, 2009, resulting in a reorganization plan. *Id.* ¶ 6.

On March 31, 2009, Wells Fargo assigned or attempted to assign the mortgage to the plaintiff as trustee of the same trust. 3301 Atlantic R. 56.1 Statement ¶¶ 1(e), 5. The obligor

---

[4] "Pl. Mem." refers to the plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment and Other Relief, Docket Entry 44-3.

[5] "3301 Atlantic Mem." refers to the Defendants 3301 Atlantic and Annette Apergis' Memorandum of Law in Support of Their Motion to Dismiss and for Summary Judgment And in Opposition to the Plaintiffs' Motion for Summary Judgment, Docket Entry 43.

defendants contest, among other things, the validity of the power of attorney authorizing the assignment. Pl. R. 56.1 Statement ¶ 7. Following the plaintiff's purported assumption of the role of trustee, on October 16, 2009, plaintiff and 3301 Atlantic modified the mortgage note and assignment. Pl. R. 56.1 Statement ¶ 8. Three days later, the parties amended the loan documents to provide for a new payment schedule for the outstanding balance. *Id.* ¶ 10; 3301 Atlantic R. 56.1 Statement ¶ 6. Plaintiff claims that the obligor defendants are in default on the mortgage and states that it holds the superior lien on the property it secures. Pl. R. 56.1 Statement ¶¶ 13, 19.

The other answering defendants, BRFI, Richard and Jeffrey Siegel, Blue Ridge Foods and Marvin Sussman, have a lawsuit pending against the obligor defendants in state court. *Blue Ridge Farms, Inc., et al. v. Kontogiannis, et al.*, Index No. 23246/2008. Notices of pendency were filed in that case in May and June of 2010. BRFI R. 56.1 Statement ¶¶ 1, 3. Blue Ridge Farms ("BRFI") and the Siegels allege in their state court case that 3301 Atlantic and Ms. Apergis fraudulently acquired title to the property at issue in this action from them. *Id.* ¶ 6. They also have brought suit against defendant Blue Ridge Foods, which holds a lease on the property. *Id.* ¶¶ 7, 12-13.[6] As noted above, this case has been stayed as to Blue Ridge Foods due to that entity's pending bankruptcy case. *See* Court Order dated Apr. 20, 2012. BRFI has made a cross-motion in this case to ensure that any surplus funds that might result from a foreclosure sale be placed in escrow pending the resolution of the state court case. *See* Notice of Cross Motion, Docket Entry 47.

---

[6] Blue Ridge Foods, and guarantor of its lease Marvin Sussman, have appeared at several conferences and have answered the complaint; they, however, have not filed any papers in connection with the motion for summary judgment and their answer to the complaint either admits or states that they are without knowledge of all the allegations in the amended complaint.

As noted above, 3301 Atlantic and Ms. Apergis now move to dismiss the case, Docket

Entry 40, and the plaintiff moves for summary judgment against the answering defendants and

entry of default judgments against those defendants who have not appeared, Docket Entry 44.

## DISCUSSION

### I.      Obligor Defendants' Motion to Dismiss

#### a.    *Jurisdiction*

Plaintiff invokes this Court's diversity jurisdiction.  Amend. Compl. ¶ 13, Docket Entry

10.  It is undisputed that plaintiff is the only party that is a citizen of North Carolina, where its

main offices are located.[7]  *Id.* ¶¶ 1-12.  *See also Wachovia Bank v. Schmidt*, 546 U.S. 303, 307

(2006) (interpreting 28 U.S.C. § 1348 to provide that a national bank, such as plaintiff, is a

"citizen of the State in which its main office, as set forth in its articles of association, is located"

and not "additionally a citizen of every State in which it has established a branch");

*Manufacturers & Traders Trust Co. v. HSBC*, 564 F. Supp. 2d 261, 263 (S.D.N.Y. 2008)

(applying this citizenship analysis in the case of a national banking association acting as a

trustee).  The obligor defendants nonetheless challenge jurisdiction by contending that whether

complete diversity exists must be determined by reference to the citizenship of the trust's

certificate holders rather than that of the trustee.  3301 Atlantic Mem. at 15.

The obligor defendants' argument is foreclosed by the Supreme Court's decision in

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980).  *Navarro* addresses the question of whether the

citizenship of trustees or that of trust beneficiaries controls for diversity purposes.  In answering

---

[7] Bank of America also notes that another entity, U.S. Bank, has or will shortly be assuming the role of trustee. Pl. Reply Mem. at 18-19, Docket Entry 45.  It appears that this bank's involvement in the case would not destroy diversity, and, in any case, no party has made a motion to substitute parties.  *See* FED. R. CIV. P. 25(c); *id.* at 19. Defendants suggest, however, that the plaintiff has asked this court to substitute parties under Rule 25(c).  *See* 3301 Atlantic Reply Mem. at 1, Docket Entries 51-52.  I do not read the plaintiff's discussion of the new trustee as asking for this relief but rather as stating that it can continue as the named party in this action until a Rule 25(c) motion is made.  *See* Pl. Reply Mem. at 18-19.

this question, the Court looked to which entity or entities were the real parties in interest, and noted that Federal Rule of Civil Procedure 17(a) permits the trustee of an express trust to sue in its own name without joining the person for whose benefit the action is brought.  *See* 446 U.S. at 462 (identifying the relevant issue in determining diversity where trustees of an express trust are parties to a suit as "whether [the] trustees are real parties to [the] controversy").  After reviewing the long history of Supreme Court precedent holding that individual trustees' citizenship, and not that of the trust beneficiaries, determines whether there is diversity, even when "the beneficiaries are many," *id.* at 463 (internal citations omitted), the Court reiterated the principle that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others."  *Id.* at 464. By contrast, trustees who are "'naked trustees' who act as 'mere conduits' for a remedy flowing to others" are not real parties in interest and their citizenship does not determine whether parties are diverse.  *Id.* at 465 (quoting *McNutt v. Bland*, 43 U.S. 9, 13-14 (1844)).

Contrary to the defendants' assertion that courts in the Second Circuit have never resolved how the citizenship of a trust should be determined, *see* 3301 Atlantic Mem. at 16, the District Court for the Southern District of New York, as plaintiff notes, has applied *Navarro* when analyzing diversity jurisdiction over a suit brought by a REMIC trustee.  *See LaSalle Bank Nat'l Ass'n v. Normura Asset Capital Corp.*, 180 F. Supp. 2d 465, 470 (S.D.N.Y. 2001); *see also Manufacturers & Traders Trust Co.*, 564 F. Supp. 2d at 263 (finding that the "citizenship of the trustee(s) of an indenture controls for diversity purposes, even if the note holders retain some control over the trustee(s)" (citing *Navarro*, 446 U.S. at 464-65)).

The obligor defendants contend that the Supreme Court's decision in *Carden v. Arkoma Ass'ns*, 494 U.S. 185 (1990), narrows the holding in *Navarro* and calls its application here into

question. *See* 3301 Atlantic Mem. at 18. I disagree. *Carden* involved limited partnerships and not trustees.[8] Moreover, the majority decision in *Carden* assumes *Navarro* to be good law and distinguishes the issues it resolved from those presented in *Carden*. 494 U.S. at 191-92. Nothing in *Carden* narrows the holding in *Navarro* or otherwise suggests that it does not control the outcome of this case.

The remaining question under *Navarro* is whether Bank of America is the real party in interest. Like the trustees in *Navarro* who had "legal title . . . manage[d] the assets . . . [and] control[led] the litigation," 446 U.S. at 465, Bank of America appears to have significant control as trustee. The Pooling and Servicing Agreement (PSA), which governs the trust, states that the

> Depositor . . . does . . . assign, sell, transfer, set over and otherwise convey to the Trustee, in trust, without recourse, for the benefit of the Certificateholders . . . all the right, title, and interest of the Depositor, in, to and under (i) the Mortgage Loans and all documents included in the related Mortgage Files and Servicing Files, (ii) the rights of the Depositor under Sections 2,3, 9, 10, 11, 12, 13, 14, 16, 17, 18, and 19 of each of the Mortgage Loan Purchase Agreements, and (iii) all other assets included or to be included in the Trust Fund.

PSA § 2.01(a), Farley Aff., Ex. E at 34; *see also* PSA § 2.05 (conveying the mortgage loans to the trustee upon execution of the PSA).[9] Finally, it appears that the trustee is the entity contemplated to bring a suit; the certificateholders may not sue under the PSA unless the trustee has refused to do so. *See* PSA § 11.03(c); Secinfo.com.

---

[8] Further, the cases obligor defendants cite in support of their argument examine the citizenship of a trust or other unincorporated entity, not that of a trustee. *See* 3301 Atlantic Mem. at 16-17 (citing *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334 (11th Cir. 2000) (discussing a trust's citizenship); *Mirabella Foundation v. Saint Claire Livestock Investments* (analyzing the citizenship of a foreign foundation); *FMAC Loan Receivable Trust 1997-C v. Strauss*, 2003 WL 1888673, at *1 (S.D.N.Y. Apr. 14, 2003) (finding that *Carden* was the controlling case because "[p]laintiffs here named as plaintiffs a number of business trusts")).

[9] "Farley Aff." refers to the affidavit of plaintiff's counsel, Clement J. Farley, in support of the plaintiff's motion for summary judgment, Docket Entry 44-4. The PSA is excerpted in Exhibit E of the Farley Affidavit, at 27. The entirety of the PSA is available on the online "SEC Info" database, from which plaintiff's counsel obtained the excerpts included in his affidavit in support of summary judgment. *See* "Wachovia Commercial Mortgage Trust Series 2005-C22, SEC Info, http://www.secinfo.com/dRSm6.v1a.c.htm (last visited June 26, 2012). The Mortgage Loan Purchase Agreement referenced in the PSA is also included in the same section of the online database as Ex. 99-1.

It is true that, under PSA § 3.01, "[e]ach of the Master Servicer and the Special Servicer shall service and administer the Mortgage Loans and Companion Loans that each is obligated to service and administer pursuant to [the PSA] on behalf of the Trustee, for the benefit of the Certificateholders."  However, as noted by the plaintiff, a similar delegation of administrative control was found not to preclude a trustee's status as a real party in interest.[10]  *See LaSalle*, 180 F. Supp. 2d at 470 (where servicer had the power "to take certain actions with regard to servicing loans that are in or near default," it was nonetheless not the real party in interest because it was still obligated to provide information to the trustee about its actions and the trustee retained title to the mortgages); *see also Wells Fargo Bank v. Konover*, 2009 WL 2710229, at *3-4 (D. Conn. Aug. 21, 2009) (discussing a PSA similar to the one in *LaSalle* and finding that "because . . . the Trustee has legal title and the power to manage the assets and initiate litigation . . . which delegation to [a servicer] does not negate, its own citizenship forms the basis of diversity jurisdiction independent of the citizenship of individual Certificateholders").  There is, moreover, no indication that the certificateholders, rather than Bank of America, have control over this litigation; defendants' allegations in this regard seem to be merely conclusory.  *See* 3301 Atlantic Mem. at 19-20.

---

[10] Plaintiff appears to have cited to the only cases dealing directly with this issue from courts within the Second Circuit.  Elsewhere, however, it appears that servicers may be deemed a real party in interest where they have, as they do pursuant to this PSA's Section 3.01(b), "the full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable," including the potential ability to sue in their own names.  *See CW Capital Asset Mgmt., LLC v. Chicago Props., LLC*, 610 F.3d 497, 501-02 (7th Cir. 2010) (finding that this language and the PSA's implication that the servicer could sue in its own name indicated that the servicer was the real party in interest); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) (holding that a "servicer is a party in interest in proceedings involving loans which it services").  I am unable to find cases from this Circuit, however, suggesting that the loan servicer in this case would be the real party in interest, or, more importantly, that the servicer's powers would divest the trustee of its status as a real party in interest.

I therefore conclude that Bank of America is a real party in interest and, under *Navarro*, is appropriately viewed as a North Carolina citizen. As such, there is complete diversity and resulting subject matter jurisdiction.

The obligor defendants make additional arguments regarding this Court's jurisdiction: that plaintiff's claims should be dismissed, first, because of the existence of a state court forum selection clause in the September 19, 2008 forbearance agreement, Farley Aff., Ex. C ¶ 11(f), and, second, because of the existence of a pending state court case.[11] *See* 3301 Atlantic Mem. at 20-22. These claims merit little discussion and do not provide grounds for dismissal.

The forbearance agreement cited by the obligor defendants expired on January 11, 2009 and, by its own terms, provides that the original loan documents control after its expiration. Farley Aff., Ex. C ¶¶ 2, 9. While a forum selection clause may still be enforceable after a contract's expiration, it remains controlling only if the suit arises under the contract. *See Weingard v. Telepathy, Inc.*, 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005). There is no question that this foreclosure action did not arise under the forbearance agreement, and the forum selection clause in that agreement therefore does not require dismissal.[12]

The obligor defendants also point to a case pending in a New York state court that they contend addresses the mortgage at issue. The case, pending in Kings County, is between Wells Fargo and 3301 Atlantic LLC, Index No. 001014/2008, and has been stayed since January 14, 2009. WebCivil Supreme- Case Search Results, http://iapps.courts.state.ny.us/webcivil/FCASSearch (last viewed June 26, 2012). The obligor

---

[11] Defendants' memorandum of law incorrectly states that the Forbearance Agreement is located in the Farley Affidavit at Exhibit E. *See* 3301 Atlantic Mem. at 20.

[12] Plaintiff also argues that the defendants have waived this motion because it was not timely under FED. R. CIV. P. 12(h). Given my analysis above and the fact that it is unsettled whether these types of motions should be brought under Rule 12 (and, if so, under what section of the Rule), *see TradeComet.com, LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011), I need not reach this question.

defendants suggest that this Court should abstain pursuant to *Colorado River* in light of the state court case. See 3301 Atlantic Mem. at 22 (citing *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1126 (2d Cir. 1990), which examines federal court abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), when a state action is pending).[13] Federal courts may generally abstain from acting only where "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Bank of America v. Sharim, Inc.*, 2010 WL 5072118, at *3 (S.D.N.Y. Dec. 13, 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983)). Here, the state court case is stayed, apparently as a result of the filing of a reorganization plan, approved by the Eastern District of New York Bankruptcy Court, which bars the parties from continuing "any suit, action or other proceeding against the Debtor" or its assets. *See* Pl. Reply Mem. at 21-22; Bankr. Ct. Order at 13.[14] Further, plaintiff's counsel (then representing plaintiff's predecessor in interest Wells Fargo) represents that, on November 8, 2010, he sent a proposed stipulation dismissing the state court action to the defendants for approval, but received no response. *See* Pl. Reply Mem. at 22; Farley Supp. Aff., Ex. C. Thus, the state court action is as a practical matter no longer a pending action, and does not provide "an adequate vehicle for the complete and prompt resolution" of the parties' dispute. Accordingly, there is no basis for abstention.

---

[13] Under *Colorado River* and subsequent cases, a federal court evaluating whether to dismiss or stay an action should consider six factors: "(1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999) (quoting *DeCisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)).

[14] "Bankr. Ct. Order" refers to the E.D.N.Y. Bankruptcy Court Notice of Entry of Order Confirming Chapter 11 Plan of Reorganization, Case No. 1-09-40189-cec. The Order is located in the Supplemental Affidavit of Clement J. Farley in Further Support of Plaintiff's Motion for Summary Judgment Other Relief ("Farley Supp. Aff."), Ex. B, Docket Entry 46.

b. *Validity of the mortgage transfer*

The obligor defendants next raise a series of challenges to the validity of the transfer of the mortgage at issue to the REMIC trust. Based on these challenges, the obligor defendants contend that plaintiff lacks standing to foreclose on the mortgage. I reject these arguments for the reasons set forth below.

First, these defendants have executed sworn statements acknowledging that plaintiff holds the mortgages at issue. The obligor defendants agreed to a reorganization plan, later approved by a bankruptcy court, which provides that: "Wells Fargo [earlier in the agreement defined as "Bank of America, N.A., as successor to Wells Fargo Bank, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22"] shall be deemed to hold a valid, properly perfected, enforceable, non-avoidable Allowed Claim." Reorganization Plan §§ 1.63, 5.1(i).[15] Defendant Apergis also stated in an affidavit when modifying the mortgage following the reorganization that "Mortgagee [previously defined as "Bank of America, N.A., as successor to Wells Fargo Bank, N.A., as Trustee" to the relevant REMIC trust] is the holder of that certain mortgage . . . attached hereto." Hundertmark Aff. 2d, Ex. I at 59.[16] These statements are essentially party admissions by the obligor defendants that plaintiff has standing to bring this foreclosure action.

The statements made by the obligor defendants to the bankruptcy court are particularly significant because of the doctrine of judicial estoppel. The purpose of this doctrine is to "protect[ ] the sanctity of the oath and the integrity of the judicial process" by both "demand[ing] truth and consistency in all sworn positions" and "avoiding the risk of inconsistent results in two

---

[15] "Reorganization Plan" refers to the "Modified First Amended Plan of Reorganization" filed pursuant to the defendants' Chapter 11 case, located in the Farley Supp. Aff., Ex. A.

[16] "Hundertmark Aff. 2d" refers to the Affidavit of Andrew Hundertmark [Special Servicer for the plaintiff] in Support of Plaintiff's Motion for Summary Judgment and Other Relief, Docket Entry 44-5. The specific reference in the text is to an exhibit attached to the affidavit, Docket Entry 44-8 at 59.

proceedings." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position" (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Prevailing on a claim of judicial estoppel requires that the invoking party "show that: (1) his adversary 'advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.'" *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) (quoting *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996)). In addition, "courts in the Second Circuit often consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 193 (E.D.N.Y. 2010) (internal citation omitted) (collecting cases).

In this case, the Bankruptcy Court adopted statements of the obligor defendants regarding the validity of Bank of America's claim. The Court's Order states that the Court considered the plan, confirmed the plan and made it binding, and, finally, that the "failure specifically to include or reference any particular provision of the Modified Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Modified Plan be confirmed in its entirety." Bankr. Ct. Order at 11-12, 15. Given that the debt to Bank of America was the major obligation of these defendants as they reorganized following bankruptcy, it seems clear that the Court relied upon and adopted the obligor defendants' representations when it confirmed the reorganization plan.

Finally, the obligor defendants would gain an unfair advantage if they were now permitted to disavow their previously made representations. The plaintiff was consulted and accepted the plan. *See id.* at 2 (noting "Wells Fargo's" agreement with the plan, as modified); *cf.* 11 U.S.C. § 1126(a) (stating that the "holder of a claim or interest allowed under section 502 of this title [allowing claims that have been filed pursuant to other sections of the Bankruptcy Code] may accept or reject a plan"). The plan itself imposes significant obligations on the defendants running to the plaintiff. *See* Reorganization Plan § 5.1(i)-(iv) (detailing 3301 Atlantic's commitment to pay "Wells Fargo" a certain amount from a sale of some of its lots and to execute a substitute note for the remaining amount due). Accordingly, the obligor defendants are estopped from arguing that the note sued upon here is not held by the plaintiff.

Even if the obligor defendants were not estopped from challenging the validity of the transfer of the mortgage to plaintiff, I would reject the challenges they raise to the validity of the transfer on their merits. The obligor defendants argue that the transfer of the mortgage to the plaintiff was invalid because it was accomplished with an ineffective power of attorney, because an allonge was undated and not notarized, and because the trust failed to comply with certain IRS Code provisions. Each of these arguments fails.

The obligor defendants first argue that the relevant power of attorney was not executed until after the transfer of the mortgage, *see* 3301 Atlantic Mem. at 6-8; Hundertmark Aff. 2d, Ex. H, Docket Entry 44-8 at 1-3, 7-9. It does appear that the mortgage was transferred on April 14, 2009, but that the relevant power of attorney was not executed until June 30, 2009. However, all acts taken pursuant to the power of attorney were subsequently ratified. *Id.* at 8. Such ratification of an agent's acts overcomes any prior lack of authority: "[u]nder New York law, a principal can be held liable for the unauthorized acts of an agent that the principal later ratifies . .

. . Ratification is the express or implied adoption, *i.e.*, recognition and approval, of the unauthorized acts of another." *RLI Ins. Co. v. Athan Contracting Corp.*, 667 F. Supp. 2d 229, 235 (E.D.N.Y. 2009) (citing New York case law) (internal quotation marks omitted). *See also In re Adelphia Recovery Trust*, 634 F.3d 678, 691 (2d Cir. 2011) ("[r]atification is the act of knowingly giving sanction or affirmance to an act which would otherwise be unauthorized and not binding").[17] The act of assigning the mortgage falls explicitly within the power of attorney provided by the plaintiff, the act was ratified, and thus the date on which the power of attorney was executed does not provide grounds for challenging the validity of the mortgage transfer.

The absence of a date and notarization on the allonge[18] attached to the note similarly does not invalidate the mortgage transfer.[19] Defendants are correct that the allonge the plaintiff offers as an exhibit to its amended complaint, *see* Hundertmark Aff., Ex. A, Docket Entry 11 at 2, is not dated or notarized. Moreover, it is not clear how the allonge came to be attached to the note.[20] These facts are not significant in this context, however. Dating and notarization appear to be irrelevant to the status of an allonge. *See* N.Y. U.C.C. §§ 3-114, 3-307. The absence of evidence that the allonge was attached to the note may affect plaintiff's status as a holder in due course or

---

[17] The cases the obligor defendants cite on this point are irrelevant because they involve foreclosures that were not permitted to proceed because the assignments of those mortgages were not authorized—retroactively or otherwise. *See Wells Fargo Bank, N.A. v. Farmer*, 2008 WL 2309006 (N.Y. Sup. Ct. June 5, 2008) (mortgage assignment was invalid where the purported agent had not received authority through a corporate resolution or power of attorney and thus plaintiff did not have standing to foreclose on the mortgage); *U.S. Bank Nat'l Ass'n v. Bernard*, 2008 N.Y. Slip Op. 50247(U) (N.Y. Sup. Ct. Feb. 14, 2008) (same); *Deutsche Bank Nat'l Trust Co. v. Clouden*, 2007 N.Y. Slip Op. 51767(U) (N.Y. Sup. Ct. Sept. 18, 2007) (same).

[18] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled." BLACK'S LAW DICTIONARY (9th ed. 2009).

[19] These defendants similarly challenge, without authority, the validity of the assignment document because it does not include an assignee name. This argument does not merit discussion because there is no requirement that assignments include an assignee name, or even be in writing, as long as the mortgage and note are actually delivered. *See In re Feinberg*, 422 B.R. 215, 223 (Bankr. S.D.N.Y. 2010) (noting that the holder's "possession of the note and mortgage attests to their delivery and is sufficient evidence of a valid mortgage assignment"); *In re Conde-Dedonato*, 391 B.R. 247, 251-52 (Bankr. E.D.N.Y. 2008) (holding that "[a]n effective mortgage assignment is accomplished by delivery only" and that an affidavit from a loan servicer that a bank was in fact the holder of the mortgage was sufficient evidence of a valid assignment).

[20] In addition to his affidavit in support of the plaintiff's motion for summary judgment, Docket Entry 44-5, Andrew Hundertmark also submitted an affidavit in support of plaintiff's amended complaint ("Hundertmark Aff.").

the status of this note as a negotiable instrument, but it does not invalidate the transfer of the mortgage to the REMIC trust.[21] *See* N.Y. U.C.C. § 3-201(2)-(3) ("[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein;" ". . . Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner"); *see also Goshen Nat'l Bank v. Bingham*, 118 N.Y. 349, 355 (1890) (when "an instrument is transferred but without an indorsement, it is treated as a chose in action assigned to the purchaser. The assignee acquires all the title of the assignor and may maintain an action thereon in his own name"); *Cadle Co. v. Nickelson*, 1996 WL 724740, at *4 (S.D.N.Y. 1996) (same).[22, 23]

Finally, any violations of the Internal Revenue Code, assuming for purposes of the pending motions only that they occurred, might have tax consequences for the trust but would not undermine plaintiff's standing to foreclose on the mortgage. *See* 26 U.S.C. § 860D(a)(4) (discussing the tax-related penalties for REMIC trusts that hold substantial assets other than "qualified mortgages," as defined in 26 U.S.C. § 860G(a)(3)(A); there does not appear to be any prohibition in the relevant code sections on the inclusion of defaulted loans in a REMIC trust).

---

[21] "Negotiation" is defined as "the transfer of an instrument in such form that the transferee becomes a holder." N.Y. U.C.C. § 3-202(1). This status is significant because the possessor of a negotiable instrument can, under certain conditions, become a holder in due course. *See* § 3-302. A holder in due course "takes the instrument free from "all claims to it on the part of any person;" and "all defenses of any party to the instrument with whom the holder has not dealt," except for certain real defenses like infancy and fraud in the factum. § 3-305.

Defendants seem briefly to agree with the proposition that an allonge need not be attached to the note to effect transfer. *See* 3301 Atlantic Mem. at 14. This section of the brief in fact copies without attribution a source cited earlier in the brief. *Compare id. with* Lawrence Safran & Joshua Stein, *Getting Attached: When do allonges meet the requirements of the New York UCC?*, N.Y.L.J., Nov. 27, 2006, *available at* http://www.lw.com/upload/pubContent/_pdf/pub1713_1.pdf.

[22] *But cf. Slutsky v. Blooming Grove Inn*, 542 N.Y.S.2d 721 (2d Dep't 1989) (finding that the "note secured by the mortgage is a negotiable instrument (*see*, U.C.C. 3-104) which requires indorsement on the instrument itself 'or on a paper firmly affixed thereto as to become a part thereof' (UCC 3-202(2)) in order to effectuate a valid 'assignment' of the entire instrument (*cf.* UCC 3-202(3), (4)").

[23] The obligor defendants' argument that there is not, contrary to statements in plaintiff's Amended Complaint, evidence of the inclusion of the mortgage in the trust will be discussed in conjunction with plaintiff's motion for summary judgment. *See Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 288 (E.D.N.Y. 2008) (noting that "[m]otions to dismiss address the sufficiency of [a plaintiff's] complaint, not the sufficiency of [a plaintiff's] evidence" (citing *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003)).

c. *Conclusion*

In sum, the obligor defendants present no grounds on which the claims against them should be dismissed and are, in any event, judicially estopped from challenging the validity of plaintiff's ownership of the mortgage. I therefore deny the obligor defendants' motion to dismiss.

**II.      Plaintiff's Motion for Summary Judgment**

a. *Introduction*

Plaintiff seeks summary judgment against the appearing defendants and default judgments against those defendants who have not appeared. *See* Pl. Mem. at 5. More specifically, plaintiff moves to foreclose on both the mortgage and its security interest in certain personal property pledged as additional collateral. *See id.* at 4-6, 12-13. For the reasons set forth below, plaintiff's motion for summary judgment as to the obligor defendants is granted. I respectfully recommend that plaintiff's motion for summary judgment be granted as to the other answering defendants and that its motion for default judgment be granted as to the defendants who have not appeared in this action.

b. *Mortgage foreclosure*

i. Plaintiff's *prima facie* case for mortgage foreclosure

Under New York law, an entity seeking to foreclose on a mortgage must make the following showings: "(1) the proof of the existence of an obligation secured by a mortgage; (2) a default on that obligation by the debtor; and (3) a notice to the debtor of that default." *U.S. v. Paugh*, 332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004) (citing *U.S. v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991); *Ne. Sav., F.A. v. Rodriguez*, 553 N.Y.S. 2d 490 (3d Dep't 1990); *First Nat'l Bank v. J&J Milano, Inc.*, 553 N.Y.S.2d 448 (2d Dep't 1990)). Where the mortgage has

been assigned, the plaintiff faces a similar burden: it must produce the "evidence of the assignment, the mortgage, the note, and the defendants' default." *N. Bright Capital, LLC v. 705 Flatbush Realty, LLC*, 889 N.Y.S.2d 596, 597 (2d Dep't 2009) (collecting cases). If these elements are established, "the mortgage holder is entitled to a presumptive right to collect, which can only be overcome by an affirmative showing from the defendant." *Freidus*, 769 F. Supp. at 1277; *see also Fed. Home Loan Mortg. Corp. v. Karastathis*, 655 N.Y.S.2d 631, 632 (2d Dep't 1997) (noting that when the plaintiff presents a *prima facie* case, "it is incumbent upon the defendant to assert any defense which could properly raise a viable question of fact as to [the] default" (internal citation omitted)).

Plaintiff has presented a *prima facie* case for foreclosure. The second and third prongs of the *prima facie* case are the most easily addressed. Plaintiff asserts that there has been a default on the mortgage payments. *See* Pl. R. 56.1 Statement ¶ 15. The defendants have failed, in their corresponding statement, to counter this assertion. *See* 3301 Atlantic R. 56.1 Statement; Local Rule 56.1(c) (providing that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party"). Plaintiff has also provided an affidavit of the special servicer for the trust describing the default. Hundertmark Aff. 2d ¶¶ 14-17. Given the lack of opposition to plaintiff's claims that defendants have defaulted, it can be assumed that this default has occurred.

Further, there is evidence that the plaintiff notified the obligor defendants of their default. Plaintiff has submitted a letter dated June 18, 2010, notifying defendant 3301 Atlantic of its default, copied to Ms. Apergis and defendants' counsel. Farley Aff., Ex. D. The letter states that

"the Borrower is in default under the Modified Loan and the documents executed in connection

therewith . . . . As a result of the defaults . . . [t]he Lender hereby demands payment of all sums

due under the Modified Loan." *Id.* The letter's authenticity and the fact that it was sent are

undisputed. Indeed, plaintiff maintains in its Rule 56.1 statement that it "has provided the

Obligors with any and all notices required of the Defaults," Pl. R. 56.1 Statement ¶ 14, and this

assertion is not contradicted in defendants' papers. I therefore conclude that the second and third

prongs of the *prima facie* case have been satisfied by the plaintiff.

Finally, with regard to the first prong, plaintiff has produced evidence of a note, mortgage

and assignment. Defendants, however, contest the validity of the assignment and, in particular,

the authority of the plaintiff's predecessor to make that assignment. Defendants' objections are

discussed below in connection with their defenses to foreclosure.

Plaintiff has submitted an "Amended, Restated and Consolidated Promissory Note,"

dated November 21, 2005, and issued in favor of Arbor Commercial Mortgage, LLC. *See*

Hundertmark Aff. 2d, Ex. A, Docket Entry 44-5 at 9. Preceding the note is an undated allonge

stating that payments are to be made to Bank of America as trustee for the REMIC trust. *Id.* at 8.

The mortgage loan documents are included in plaintiff's papers as well. There appear to

be two relevant documents in this regard. First, there is a mortgage between 3301 Atlantic and

Arbor Commercial Mortgage relating to certain parcels of land for $2,000,000. Hundertmark

Aff. 2d, Ex. C, Docket Entry 44-6 at 2. There is also an "Amended, Restated and Consolidated

Mortgage, Security Agreement and Fixture Filing" between 3301 Atlantic and Arbor, securing a

consolidated indebtedness of $17,000,000.[24] Hundertmark Aff. 2d, Ex. D, Docket Entry 44-6 at

17. Further, these documents appear to have been modified in two 2009 agreements. First, both

---

[24] Although the two mortgage documents are dated the same day, November 21, 2005, and were both recorded on December 19, 2005, the latter document seems to incorporate the former, resulting in a total indebtedness of 17, and not 19, million dollars. *See* Hundertmark Aff. 2d, Ex. D.

the note and the mortgage were split into two portions, and a pre-existing lien securing the smaller portion was released. *See* "Note, Mortgage and Assignment Modification, Severance (Splitter) and Partial Release Agreement" ¶¶ 2-4, Hundertmark Aff. 2d, Ex. I, Docket Entry 44-8 at 48-52. Second, a new agreement was executed between 3301 Atlantic and Bank of America, with Annette Apergis as guarantor. The new agreement, styled an "Amendment to Loan Documents," states that the "Lender [Bank of America] is the holder of that certain Amended, Restate and Consolidated Promissory Note . . . given by 3301 Atlantic, LLC ("Borrower") to Arbor Commercial Mortgage, LLC, the Lender's predecessor in interest." Hundertmark Aff. 2d, Ex. K, Docket Entry 44-8 at 72. The document further clarifies which mortgages secure that note and modifies 3301 Atlantic's obligations to a $12,220,043.07 debt to be paid pursuant to a new schedule. *See id.* ¶¶ 4-5, Docket Entry 44-8 at 73.

Finally, the plaintiff has also produced an assignment. The assignment, dated April 14, 2009, transfers all rights in the loans and security held by the REMIC trust from Wells Fargo, identified as the predecessor trustee and assignor, to Bank of America, identified as the successor trustee and assignee. Hundertmark Aff. 2d, Ex. H, Docket Entry 44-7 at 93-95; 44-8 at 1-3.

Given the above, plaintiff has established a *prima facie* case in support of its right to foreclose on the mortgage. The default and notice of default are not in question. The documents demonstrating the debt and fact it is owed to Bank of America are in dispute, as will be discussed immediately below; however, the agreements clearly satisfy the plaintiff's *prima facie* burden. The burden now shifts to the defendants to demonstrate that they have a valid defense. *See Freidus*, 769 F. Supp. at 1277.

ii. Obligor defendants' defenses to foreclosure

1. Validity of the note, mortgage and assignment

Defendants contest plaintiff's standing to bring this action by calling into question the validity of the note, mortgage and assignment. Defendants do not contest the validity of the note itself. *See* 3301 Atlantic R. 56.1 Statement ¶ 1(a). They do, however, dispute the authenticity and validity of the allonge, in particular because it is not dated, not notarized, or clearly attached to the note. *See id.* ¶ 5; 3301 Atlantic Mem. at 13. Defendants also challenge the effectiveness of power of attorney giving Vanessa Orta, the signatory, the authority to sign documents before the date the power of attorney was granted. *See* 3301 Atlantic Mem. at 13.

As detailed above, defendants' objections to the allonge have no merit. The allonge need not be dated, notarized or attached for the note to be validly transferred. Similarly, and as also discussed above, the acts taken by Ms. Orta before the power of attorney was prepared were later ratified. *See* Hundertmark Aff. 2d, Ex. H, Docket Entry 44-8 at 8.

Second, defendants do not appear to claim that there is no mortgage on the relevant property. *See* 3301 Atlantic R. 56.1 Statement. The extent to which defendants admit the validity of the later amendment to the loan documents and its implications for the foreclosure case is unclear. In their Rule 56.1 statement, defendants state that on "October 19, 2009 . . . 3301 Atlantic executed Amended Loan Documents" and cite to the exhibit in Mr. Hundertmark's affidavit containing the "Amendment to the Loan Documents." *See id.* ¶ 6. Nevertheless, defendants also assert: "In fact, according to the Bankruptcy Court proceedings from September 2009, all parties proceeded with the understanding that Wells Fargo held the loan." *Id.* (citing a copy of the Reorganization Plan included in Mr. Sfouggatakis' affidavit). Although the Reorganization Plan refers to the "secured claims of Wells Fargo," Reorganization Plan §4.1, the

suggestion that the parties believed that any amounts due were to be paid to Wells Fargo, as opposed to Bank of America, is belied by a careful reading of the plan; as discussed above at page 11, *supra*, the Reorganization Plan defines "Wells Fargo" as "Bank of America, N.A., as successor to Wells Fargo Bank, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22." *See* Reorganization Plan § 1.63. This definition appears both in the copy of the plan submitted by plaintiff and in the plan copy submitted by defendants. *See* Sfouggatakis Aff. in Support [of] Motion to Dismiss and in Opposition to Summary Judgment, Docket Entry 41-4, at 16. Therefore, no question of fact has been raised about whether the new arrangement in 2009 actually contemplated that the plaintiff would hold defendants' obligations and whether it would be the entity to foreclose on defendants.

### 2. Other defenses

Defendants raise other defenses to foreclosure, including lack of subject matter jurisdiction, the supposedly pending state court case, and the state court forum selection clause, all of which have been discussed above and do not provide grounds to deny plaintiff's motion or dismiss the case.

The evidence of the transfer of the mortgage to the trust, however, has not been examined in light of the standard of proof necessary for a finding of summary judgment. *See supra* n. 23. Defendants posit, without providing any evidence, that there is no indication that the mortgage was properly placed in the REMIC trust initially, thus suggesting that Bank of America could not now hold it as trustee. *See* 3301 Atlantic Mem. at 10 (arguing that "there is no evidence in this record that Wachovia had the authority to convey this loan in the first place" and querying "Where is the authority to put it into a REMIC trust?"). In their Rule 56.1 statement, the

defendants also allude to this point by stating that the "record in this motion contains no data as to how the subject loan was acquired by the Trust. The only information and records provided are an April 10, 2006 Assignment of Mortgage to Plaintiff's [P]redecessor Trustee and an Assignment Note to" Wells Fargo as trustee. 3301 Atlantic R. 56.1 Statement ¶ 2.

In support of its motion for summary judgment, however, plaintiff has provided documentation regarding the mortgage's inclusion in the trust. The PSA contains a provision stating that the "Depositor [defined in PSA § 1.01 as Wachovia Mortgage Securities, Inc. or its successor in interest], concurrently with the execution and delivery hereof, does hereby assign, sell, transfer, set over and otherwise convey to the Trust, in trust, without recourse . . . all the right, title and interest of the Depositor, in, to and under . . . The Mortgage Loans." PSA § 2.01(a). The mortgage at issue in this case is included in an annex to the agreement. *See* PSA Mortgage Loan Schedule, Ex. B, SECinfo.com (listing 3301 Atlantic as mortgage loan number 40). The defendants do not point to any evidence suggesting that this agreement was not sufficient to convey the mortgage to the trust and thus do not present any basis for denying summary judgment on this ground.

Plaintiff having made the *prima facie* case for mortgage foreclosure and the obligor defendants having presented no valid defense to foreclosure, summary judgment on this issue is granted.

### c. *Foreclosure on the security interest*

Bank of America also contends that it may foreclose on the trust's security interest in collateral located on the property. Specifically, plaintiff claims that it may enforce this security interest pursuant to N.Y. U.C.C. § 9-601. *See* Pl. Mem. at 12-13. Defendants do not specifically address this aspect of plaintiff's motion.

The mortgage between 3301 Atlantic and Arbor Commercial Mortgage, Inc. executed in 2005 provides that the mortgage

> is also intended to encumber and create a security interest in, and Borrower hereby grants to Lender a security interest in . . . all fixtures, chattels, accounts, equipment, inventory, contract rights, general intangibles and other personal property included within the Property . . . (said property is hereinafter referred to collectively as the "Collateral").

"Amended, Restated and Consolidated Mortgage, Security Agreement and Fixture Filing" ¶ 2.17, Hundertmark Aff., Ex. D, Docket Entry 44-6 at 48. The agreement further affirms that the mortgage "constitutes a security agreement between Borrower and Lender with respect to the Collateral in which Lender is granted a security interest hereunder [and] . . . Lender shall have all of the rights and remedies of a secured party under any applicable Uniform Commercial Code." *Id.* ¶ 2.18. These rights appear to have been maintained in the 2009 agreements regarding 3301 Atlantic's obligations to Bank of America. *See* "Note, Mortgage and Assignment Modification, Severance (Splitter) and Partial Release Agreement" ¶ 7, Hundertmark Aff., Ex. I, Docket Entry 44-8 at 51 (noting that "[e]xcept as amended by this Agreement, the terms and conditions of the Loan Documents (as defined in the Original Mortgage) remain unchanged and in full force and effect"). The applicable uniform commercial code provision, N.Y. U.C.C. § 9-601(a)(1), provides that a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." It also states that a secured party may take possession of collateral following a default. § 9-609(a)(1). Therefore, by virtue of the terms of the mortgage and the N.Y. U.C.C., the plaintiff may foreclose on its security interest in the collateral on the property. *See also Lehman Bros. Holdings, Inc. v. Walji*, 2011 WL 1842838, at *4 (S.D.N.Y. May 11, 2011) (examining N.Y. U.C.C. §§ 9-601 and 9-609 and holding that because "there is no genuine issue of material fact

concerning whether [plaintiff] is a secured party and [defendant] is in default, [plaintiff] may, as a matter of law, enforce its security interest").

        d. *Entry of default judgments*

Plaintiff also moves for entry of default judgments against defendants New York City Environmental Control Board, East Coast Petroleum, Inc., and June Siegel (both as an individual and as a representative of the estate of Seymour Siegel). *See* Pl. Mem. at 15. The defaults of these defendants were entered by the Clerk of the Court on January 19, 2011 and February 24, 2011. The three defendants were included in the action because they may have had claims against defendants 3301 Atlantic and Annette Apergis. *See* N.Y. REAL PROP. ACTS. § 1311 (describing necessary defendants to a mortgage foreclosure action). The Environmental Control Board was made a part of the action "because it has or may claim to have an interest in the [property] by virtue of the monthly judgment file ending May 31, 2010." Amend. Compl. ¶ 45. Similarly, East Coast Petroleum was named because of a possible interest "by virtue of a mechanic's lien filed with the Kings County Clerk on April 21, 2010." *Id.* ¶ 46. Finally, June Siegel, as an individual and estate representative, was included "because [she has] or may claim to have an interest in the [property] by virtue of a Notice of Pendency filed by [her] in connection with an action pending in the Supreme Court of the State of New York, Kings County, entitled *Blue Ridge Farms, Inc., et al. v. Kontogiannis*." *Id.* ¶ 50. The complaint further states that "[a]ny interest or lien that any Defendants may have or claim to have in or on the Mortgaged Property or some part thereof is subject to and junior to the lien of the Lender's Mortgages." *Id.* ¶ 51. Although each of these defendants has been served, *see* Docket Entries 12-14, 20, and 23, none has moved to have the entry of default vacated or otherwise appeared in the action.

New York Real Property Actions and Proceedings Law § 1331 provides that the necessary parties to a mortgage foreclosure action include: "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." § 1311(3). This rule "derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale." *N.C. Venture I, L.P. v. Complete Analysis, Inc.*, 803 N.Y.S.2d 95, 98 (2d Dep't 2005) (quoting *Polish Nat'l Alliance v. White Eagle Hall Co.*, 470 N.Y.S.2d 642, 646 (2d Dep't 1983)). Where a necessary party is not joined, that "party's rights are unaffected by the judgment of foreclosure and sale." *In re Oligbo*, 328 B.R. 619, 640 (Bankr. E.D.N.Y. 2005).

Courts have found that entry of a default judgment under FED. R. CIV. P. 55 is appropriate where the complaint alleges "nominal liability – i.e., that any judgments the Defaulting Defendants may have against [the debtor], if liens on the mortgaged property, are subordinate to the [plaintiff's] lien." *Christiana Bank & Trust Co. v. Dalton*, 2009 WL 4016507, at *5 (E.D.N.Y. Nov. 17, 2009); *see also Greystone Bank v. Skyline Woods Realty, LLC*, 817 F. Supp. 2d 57, 66 (N.D.N.Y. 2011); *First Trade Union Bank v. Formerly 8th St., LLC*, 2011 WL 3877077 (E.D.N.Y. Aug. 13, 2011); *Debcon Fin. Servs., Inc. v. Orange Realty Corp.*, 2005 WL 1606393 (E.D.N.Y. Feb. 16, 2005); *Fed. Home Mortg. Corp. v. 41-50 78th St. Corp.*, 1997 WL 177862 (E.D.N.Y. April 4, 1997). The case law does not address the precise factual situation in this case as to June Siegel, a defendant who is involved in a state court case and has placed a notice of pendency on the property. Nevertheless, because a notice of pendency "does not prevent a sale of the property and does not create a lien or encumbrance on the property" and "merely. . . [puts] the world on constructive notice that the property is the subject of a pending

lawsuit," *In re Am. Motor Club, Inc.*, 109 B.R. 595, 597 (Bankr. E.D.N.Y. 1990) (citing New York cases), I find that entry of a default judgment is appropriate. I thus respectfully recommend that default judgments be entered against the Environmental Control Board, East Coast Petroleum and June Siegel.

e. *The interests of the remaining answering defendants*

The remaining answering defendants, Blue Ridge Farms ("BRFI"), Jeffrey Siegel and Richard Siegel, and Blue Ridge Foods and Marvin Sussman, do not contest the facts asserted by the plaintiff, *see* BRFI R. 56.1 Statement ¶ 1; Blue Ridge Foods Answer, Docket Entry 32. As noted above, the case is stayed as to Blue Ridge Foods, due to a pending bankruptcy proceeding in another district. *See* Order dated Apr. 20, 2012. The case is not, however, stayed as to Marvin Sussman, and he does not contest the facts asserted by the plaintiff. *See* Blue Ridge Foods and Sussman Answer, Docket Entry 32. BRFI and Jeffrey and Richard Siegel similarly do not appear to contest the plaintiff's entitlement to summary judgment.[25] Instead, defendants BRFI and the Siegels have made what they term a cross-motion to have held in escrow any funds the plaintiff receives in excess of what it is owed, or any funds 3301 Atlantic and Apergis receive from selling or renting their property. The motion is based on the notice of pendency on the property at 3301 Atlantic these defendants have obtained in a pending state court case in Kings County.[26] *See* Notice of Cross-Motion, Ex. A, Docket Entry 47-4. Plaintiff has opposed this motion as premature, *see* Docket Entry 48, and the obligor defendants have taken no position on it, *see* Docket Entry 62.

---

[25] Although these defendants' cross-motion is entered on the docket sheet as "Response in Opposition re Motion for Summary Judgment," the defendants' papers make clear that it is in fact a cross-motion seeking to enforce their rights to any excess funds obtained by the plaintiff and other defendants. *See* Notice of Cross-Motion, Docket Entry 47.

[26] This case is currently pending before the Kings County Supreme Court. *See Blue Ridge Farms v. Kontogiannis*, Index No. 23246/2008, WebCivil Supreme, http://iapps.courts.state.ny.us/webcivil/FCASSearch (last viewed June 27, 2012).

As these defendants do not contest any of the facts entitling plaintiff to summary judgment, I recommend that summary judgment be granted in plaintiff's favor.  At this time, I do not make a recommendation on BRFI's cross-motion because I agree that motion is premature; it is not clear plaintiff will recover any excess funds.  Further, New York law already provides for the distribution of assets recovered as a result of a foreclosure sale after it is complete.  *See* N.Y. REAL PROP. ACTS. § 1361.  Accordingly, I recommend that the cross-motion be denied without prejudice to its renewal if that becomes appropriate in the future.

## CONCLUSION

For the reasons stated above, the obligor defendants' motion to dismiss is denied. Plaintiff's motion for summary judgment is granted against the obligor defendants.  The Clerk of Court is directed to enter judgment accordingly.  I respectfully recommend that summary judgment in favor of plaintiff be granted as to the remaining answering defendants and that default judgments be entered against the Environmental Control Board, East Coast Petroleum and June Siegel.

Any objections to the recommendations made in this Report must be made within fourteen days after service of the Report and, in any event, no later than July 19, 2012.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2).  Failure to file timely objections may waive the

right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten day limit).  Plaintiff shall serve this Memorandum and Order and Report and Recommendation on the defendants who have not appeared and file proof of service with the Court forthwith.  Plaintiff shall further submit a proposed order consistent with this Memorandum and Order and Report and Recommendation by July 19, 2012.  Objections to that proposed order are due July 26, 2012.


SO ORDERED.

Dated:        Brooklyn, New York
              June 29, 2012


                                                   _____/s/_____
                                                   STEVEN M. GOLD
                                                   United States Magistrate Judge


*U:\rmk 2011-12\Bank of Am v 3301 Atlantic\BoA v 3301 Atlantic MtD SJ M&O.docx*